### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| SEAN J. FLOYD, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-00242-NT |
| | ) | |
| WALDO COUNTY et al., | ) | |
| | ) | |
| Defendants | ) | |

## RECOMMENDED DECISION ON MOTION TO DISMISS

In his pro se complaint, Sean J. Floyd brings civil rights claims against Waldo County and Waldo County Sheriff's Deputies Nick Oettinger, Darrin Moody, Daniel Perez, and Jordan Tozier. *See* Complaint (ECF No. 1). The Defendants move to dismiss Floyd's complaint. *See* Motion (ECF No. 9). Because I conclude that Floyd's claims are barred by res judicata and that, in any event, his complaint fails to state a claim, I recommend the Court grant the Defendants' motion and dismiss Floyd's complaint.

## I. Background

Floyd's complaint contains the following allegations, which are taken as true for the purposes of assessing the Defendants' motion to dismiss. *See Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009).

On August 8, 2018, Waldo County Sheriff's Department (WCSD) deputies served Floyd with a no trespass notice for picketing at Swan Lake Grocery (SLG) and asked him to leave the store's private parking lot. Complaint ¶¶ 9, 11. Floyd told the

1

deputies that he would relocate his protests to public property nearby, but Deputy Oettinger informed him that he was being given a warning and had to wait twenty-four hours before continuing to protest anywhere near SLG. *Id.* ¶ 12.

When Floyd resumed his protest from public property a few days later, SLG employees verbally accosted him and complained about him to the WCSD. *Id.* ¶¶ 14-15, 18, 24. Deputy Perez responded to one such incident, while Deputy Moody responded to others; both refused to address Floyd's complaints about being harassed and warned him that he would be arrested if he caused a disturbance in the next twenty-four hours. *Id.* ¶¶ 15, 19, 21-26.

On August 12, 2018, Floyd called the WCSD to complain about Deputy Moody and was transferred to Deputy Moody himself. *Id.* ¶ 28. When Floyd attempted to lodge a complaint against SLG and its employees for harassing him, Deputy Moody blamed him for causing a disturbance, told him that he would be arrested if he engaged with SLG customers while protesting, and warned him that he risked arrest if he caused a disturbance in the subsequent twenty-four hours. *Id.* ¶¶ 29-33.

The next day, Floyd was again harassed by an SLG employee and others while protesting on public property. *Id.* ¶¶ 36-39. Floyd called the WCSD and reported the incident to Deputy Perez, who declined to pursue the matter after explaining that the WCSD could not bring charges against the SLG employee because Floyd had not been "afraid enough at that exact moment." *Id.* ¶ 40.

On August 14, 2018, SLG's owners met with Deputy Tozier and submitted complaints against Floyd for terrorizing. *Id.* ¶ 42. Deputies Tozier and Moody

2

arrested Floyd on terrorizing charges later that day. *Id.* ¶ 43. During the arrest, Deputy Tozier asked Floyd if he had stated that he wanted to kill one of SLG's owners in a YouTube video that he had created in which he used violent imagery and discussed his feelings about SLG. *Id.* ¶ 44. Floyd admitted to the statement in the heat of the moment but clarified to Deputy Tozier that he had also said in the video that he "wasn't going to actually do it." *Id.* When Floyd attempted to submit a terrorizing complaint against SLG and its employees, Deputies Moody and Tozier refused to pursue the matter. *Id.* ¶¶ 47-48. Floyd was eventually released on bail subject to the conditions that he wear a location-tracking ankle monitor, stay away from certain public property located in downtown Swanville, and abstain from social media use. *Id.* ¶ 51.

Floyd then began protesting SLG from his private residence. *Id.* ¶¶ 51-52. On August 23, 2018, one of SLG's owners stopped her vehicle while passing Floyd's residence to film him protesting for a few moments before driving away. *Id.* ¶ 52. Shortly after that interaction, Deputy Oettinger arrived at Floyd's residence with another deputy and threatened to arrest him because the SLG owner had called the WCSD to complain that Floyd was protesting too close to the store. *Id.* ¶ 53. The same SLG owner drove by to film him again three days later, this time calling out to Floyd in an attempt to engage him in conversation. *Id.* ¶ 55. Floyd called the WCSD and asked Deputy Moody to issue a cease harassment notice to the SLG owner, but Deputy Moody denied his request and reminded Floyd that, due to his bail conditions, he would be arrested if he interacted with her in any way. *Id.* ¶¶ 56-57.

There were subsequently four instances where an individual driving past Floyd's residence threw litter at him while he was outside.  *Id.* ¶¶ 59, 61, 62, 66. Floyd identified the vehicle involved in the last two incidents as belonging to SLG's landscaper.  *Id.* ¶¶ 62, 66.  Floyd reported the first three occurrences to the WCSD, and Deputy Perez indicated that he would try to follow up with SLG about its landscaper, but Floyd never received any updates on the matter.  *Id.* ¶¶ 60-61, 63-65.

In October 2018, Floyd submitted several written complaints to the WCSD regarding the events in August.  *Id.* ¶ 68.  The WCSD did not respond to any of the complaints until Floyd followed up on them in 2021, at which point it addressed only Floyd's complaint concerning Deputy Moody and determined that the Deputy Moody's actions comported with WCSD policy.  *Id.*  The WCSD also threatened to arrest Floyd if he continued to inquire about the status of his complaints.  *Id.*

Based on these allegations, Floyd brings 42 U.S.C. § 1983 claims against the various groupings of the individual defendants for violations of his First, Fourth,[1] Fifth, and Fourteenth Amendment rights, and against Waldo County on the basis that it was the proximate cause of these constitutional violations due to a failure to train and/or its policies and customs.  *See id.* ¶¶ 72-80.

## II. Discussion

The Defendants first argue that Floyd's claims are barred by the claim preclusion prong of res judicata.  *See* Motion at 5-7.  They correctly point out that Floyd previously asserted very similar claims in two earlier complaints that were

---

[1] Floyd appears to agree that his Fourth Amendment claims should be dismissed.  *See* Opposition (ECF No. 10) at 1.

dismissed by this Court upon initial review. *See id.* at 1-7; *Floyd v. Waldo Cnty. Sheriff's Dep't*, Nos. 1:23-cv-00378-NT, 1:23-cv-00379-NT, 2024 WL 2110265 (D. Me. May 10, 2024) (rec. dec.), *aff'd*, 2024 WL 2924213 (D. Me. June 10, 2024).

Claim preclusion applies when there is "(1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits." *Foss v. E. States Exposition*, 67 F.4th 462, 466 (1st Cir. 2023) (cleaned up). I will address each element in turn.

First, this Court's dismissal of Floyd's earlier complaints for failing to state a claim qualifies as a final judgment on the merits. *See Floyd,* 2024 WL 2110265, at *3-4; *AVX Corp. v. Cabot Corp.*, 424 F.3d 28, 30 (1st Cir. 2005) ("[A] dismissal for failure to state a claim is treated as a dismissal on the merits . . . ."); *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1725 (2020) (noting that "when a court dismisses a case for failure to state a claim" without specifying "whether the order is with or without prejudice," Fed. R. Civ. P. 41(b) dictates that the dismissal be treated "'as an adjudication on the merits'—meaning a dismissal with prejudice").

Second, the causes of action in Floyd's earlier cases and the instant case are sufficiently identical because they all "derive from a common nucleus of operative facts." *Breneman v. United States ex rel. F.A.A.*, 381 F.3d 33, 38 (1st Cir. 2004). Indeed, Floyd's prior claims and his instant claims all stem from his protests against SLG and his interactions with the WCSD and its deputies. *Compare* Complaint, *with Floyd v. Waldo Cnty. Sheriff's Dep't*, No. 1:23-cv-00378-NT, ECF No. 1

(D. Me. Oct. 5, 2023), *and Floyd v. Waldo Cnty. Sheriff's Dep't*, No. 1:23-cv-00379-NT, ECF No. 1 (D. Me. Oct. 5, 2023).

Finally, there is sufficient identicality between the parties in this case and the parties in Floyd's earlier suits.  The only defendant in this action who was not also named in Floyd's earlier complaints is Deputy Oettinger, and he plainly shares a close and significant relationship with the original defendants such that he should have been named as a defendant in the prior complaints relating to the same events. [2] *See In re El San Juan Hotel Corp.*, 841 F.2d 6, 10-11 (1st Cir. 1988) (noting that defendants who were not named in the earlier action may nevertheless invoke claim preclusion if they "have a close and significant relationship with the original defendants" such that they should have been joined in the earlier action).

Floyd's complaint is also subject to dismissal for failure to state a claim. As with his prior complaints, even with a liberal reading, his current complaint lacks sufficient cogent detail to state a viable section 1983 claims against any of the individual defendants.  *See Bell Atl. Corp. v. Twombly*, 550 U.S 544, 570 (2007) (holding that a complaint must contain "enough facts to state a claim to relief that is plausible on its face" and that complaints that fail to cross "the line from conceivable to plausible . . . must be dismissed").  Likewise, his claims against Waldo County fail because he offers only bare legal conclusions without any supporting facts. *See Sanchez*, 590 F.3d at 50 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))

---

[2] Floyd's earlier complaints did not explicitly name Waldo County as a defendant, but I liberally construed his claims against the Waldo County Sheriff's Department as claims against Waldo County. *See Floyd*, 2024 WL 2110265, at *3.

(noting that conclusory "the-defendant-unlawfully-harmed-me" allegations "should not be given credence when standing alone").

### III. Conclusion

For the foregoing reasons, I recommend that the Court **GRANT** the Defendants' motion and **DISMISS** Floyd's complaint with prejudice.

## <u>*NOTICE*</u>

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the District Court and to appeal the District Court's order.*

Dated: March 4, 2025

/s/ Karen Frink Wolf
United States Magistrate Judge